## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LINDA SUE MCKEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-320-SPS |
| | ) | |
| RHONDA MCCLURE, GARON | ) | |
| MCCLURE, AND SPIRO | ) | |
| NURSING HOME, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Plaintiff Linda McKean brought suit against the Defendants, Rhonda McClure, Garon McClure, and Spiro Nursing Home, Inc., alleging claims regarding breach of fiduciary duty, fraud and misrepresentation, and requesting dissolution of the corporation, and also requesting that a receiver be appointed. The Plaintiff also filed a motion requesting that a receiver be appointed, as well as for temporary injunctive relief, then later filed a subsequent motion for further temporary injunctive relief. Following an evidentiary hearing and pursuant to the Court's ruling on the bench, this written order memorializes the Court's findings and previous ruling. As stated at the conclusion of the evidentiary hearing and described below, the Plaintiff's Application for Appointment of Custodian and/or Corporate Receiver and for Temporary Injunction and Supporting Brief [Docket No. 4] and Plaintiff's Application for Additional Temporary Orders and Supporting Brief [Docket No. 45] are hereby GRANTED IN PART and DENIED IN PART as follows.

## A. Factual Summary

The Spiro Nursing Home, Inc., is an Oklahoma close corporation operating the Spiro Nursing Home in Spiro, Oklahoma. The current division of shares reflects that the Plaintiff holds 40% and her sister, non-party Patsy Odom, holds 10%, comprising 50% of the shares. Ms. McKean worked at the nursing home at some point although that was short-lived and she has not worked there since, but she is currently the Secretary/Treasurer of the corporation. The remaining 50% of the shares are owned by Defendant Rhonda McClure at 42.9%, her son Defendant Garon McClure at 5%, and her daughter non-party Happy Wilson at 2.1%. Rhonda McClure is the Vice-President of the corporation, and Garon does not hold office. Rhonda McClure was married to the Plaintiff's brother, Gary McClure, until he passed away in 2010. Gary was President of the corporation at the time of his death, and a successor has not been elected. Rhonda and Gary had operated the Spiro Nursing Home together since 1978, with Gary serving as the licensed nursing home administrator while Rhonda McClure handles human resources issues, community contacts, and is a Certified Nurse Assistant, enabling her to also assist with patient care. Around 2007, Garon joined his parents in working at the nursing home, and served as the Assistant Nursing Home Administrator until Gary's death, at which time he took on the role of Administrator because he holds certification as a licensed nursing home administrator.

Ms. McKean first sued the corporation back in 1999, over, *inter alia*, issues related to the payment of dividends. As a result, shareholders passed a resolution that

40% of net profits ought to be paid out as dividends every quarter, and that written statements for non-payment shall be provided in their absence.  Other litigation disputes have arisen over the years, but the parties have heretofore worked out their differences sufficiently to continue the operation of the nursing home.  Following the death of Gary McClure, the shareholders have been unable to elect a successor President of the corporation since the 2011 annual meeting.  As such, Rhonda McClure, the elected Vice-President, serves as the acting President of the corporation.  The corporation continues to hold annual meetings every July.  At the most recently-held shareholders meeting, in July of 2016, Ms. McKean and Ms. Odom were accompanied by Ed Pendergrass and his wife, Donna Pendergrass, whom they have given power of attorney over their affairs.  In his capacity as their representative, Mr. Pendergrass made a number of motions at the meeting regarding agenda items, including motions related to discussing cost-cutting measures, reduction of salary for the administrator position as well as replacement of Garon McClure as administrator, and a retained earnings disbursement.  Additionally, Garon McClure and Ms. McKean both vied for the position of President.  All motions failed due to lack of a majority vote, including the motions related to electing a President of the corporation.

Ms. McKean has now once again brought suit, alleging that both Rhonda McClure and Garon McClure have breached their fiduciary duties to her, that she is entitled to a full and accurate accounting of the corporation, that Rhonda and Garon McClure have engaged in a scheme to defraud Plaintiff and her sister out of dividends by way of underreporting income, and that the corporation should be dissolved on the basis of

deadlock and dissension.  Additionally, Ms. McKean has requested the appointment of a receiver.

Pursuant to the Plaintiff's request for immediate appointment of a receiver, the Court held the first day of the evidentiary hearing on September 16, 2016.  *See* Docket No. 33.  At the request of the parties, the hearing was continued multiple times until it was stricken on November 9, 2016 to be reset at a later date if the parties so requested.  *See* Docket Nos. 38, 44.  In March 2017, the Plaintiff renewed her request for the evidentiary hearing, and further hearing was ultimately held on April 12-13 & 21, 2017.  *See* Docket Nos. 79, 82, 84.

The Plaintiff alleges that the Defendants are engaged in mismanagement and outright fraud in their day-to-day operations of the nursing home.  Evidence from the hearing revealed a number of irregularities and/or errors in the operation of the nursing home.  Of particular note were two weeks of Medicaid billing in 2015 that were not received by the nursing home, and a laundry contract entered into in 2015.  The missed Medicaid payments related to March 1-8, 2015 and October 26-November 1, 2015, and amounted to approximately $101,667.91 in lost revenue for the nursing home.  Additionally, Garon McClure testified that he entered into the laundry contract because he believed that it would save the nursing home money, but it actually cost the nursing home far more than they expected and locked them into a 5-year contract.  These costly errors occurred during the same year that the nursing home needed to replace the roof, replace the vent hood in the kitchen, and perform approximately $10,000.00 in electrical

work.  Although dividends in the amount of $150,000 were paid out in 2014, only $15,000 in dividends were paid in 2015.

In addition, the evidence revealed:  (i) that although Garon and Rhonda McClure both used the company credit card to put gas in their personal vehicles, they did not keep a trip log of auto expenses until requested to do so by Mr. Pendergrass; (ii) the nursing home continued to pay bonuses, including Christmas bonuses to Garon and Rhonda McClure in 2015, the same year as the missed Medicaid payments, costly laundry contract, and additional capital expenditures; (iii) since becoming the Administrator, Garon has collected a "consultant fee" every year but 2017 for "extra" work done at the nursing home, including IT work, a precedent set by Gary McClure; (iv) both Garon McClure and Rhonda McClure's salaries continued to collect incremental/cost of living increases yearly; (v) the nursing home began a 401(k) plan for employees in 2016, for which both Rhonda and Garon McClure were eligible; (vi) the nursing home stopped paying for Linda McKean's health insurance when she attained the age of 65.  By the Plaintiff's own expert testimony, the "mismanagement" described was that he saw areas where the profitability of the nursing home could be enhanced.  At the close of the hearing, the Court announced its ruling from the bench, stating that this written order would follow.

## B.  Analysis

In Plaintiff's "Application for Appointment of Custodian and/or Corporate Receiver and for Temporary Injunction" [Docket No. 4], the Plaintiff requests:  (i) the appointment of a receiver of custodian and (ii) a temporary restraining order or injunction

forbidding Defendants from operating in any way other than in the ordinary course of business. Plaintiff's "Application for Additional Temporary Orders" [Docket No. 45] requested the additional temporary orders of: (i) once again, from operating in any way other than in the ordinary course of business; (ii) requiring all expenditure payments be subject to dual signatures, one from one of the Defendants and one from the Plaintiff's power of attorney, Mr. Pendergrass; (iii) providing unredacted monthly accounts receivable and census reports to Mr. Pendergrass, and that all deposits be approved by Mr. Pendergrass prior to deposit; (iv) revoking or suspending all nursing home credit cards and providing all credit card statements to the Plaintiff or Mr. Pendergrass; (v) halting all bonuses, Christmas or otherwise; (vi) prohibiting corporate funds from being used for payment of Defendants' ongoing legal expenses; and (vii) providing independent corporate counsel for the corporation because current legal counsel is an "active witness."

Taking the issues raised by the Plaintiff in turn, the Court finds that a receivership is not appropriate at this time. "Whether a federal court should appoint a receiver in a diversity action presents a question resolved by federal law. Thus, federal procedural standards may preclude receivership even when a state statute would compel appointment in a state court of concurrent jurisdiction." *Waag v. Hamm*, 10 F. Supp. 2d 1191, 1193 (D. Colo. 1998), *citing Maxwell v. Enterprise Wall Paper Mfg. Co.,* 131 F.2d 400, 402 (3d Cir.1942); Wright, Miller & Kane 12 Fed. Prac. & Proc. Civ. § 2983; *Britton v. Green,* 325 F.2d 377, 382 (10th Cir.1963); and *Inland Empire Ins. Co. v. Freed*, 239 F.2d 289, 292 (10th Cir. 1956). "A receiver appointed by a federal court is an officer of the court who, once appointed, shall manage and operate the property according to the laws

of the state where the property is located.  Like injunctive relief, receivership is not a positive right.  Rather, it is an extraordinary equitable remedy that lies in the discretion of the court, justifiable only in extreme situations." *Waag*, 10 F. Supp. 2d at 1193, *citing* 28 U.S.C. § 959(b); *Kelleam v. Maryland Cas. Co. of Baltimore, Md.,* 312 U.S. 377, 381 (1941); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314, 316 (8th Cir.1993); and *Macon Lumber Co. v. Bishop & Collins,* 229 F.2d 305, 307 (6th Cir.1956).

"The appointment of a receiver or the refusal to appoint rests in the sound judicial discretion of the trial court, and its action thereon will not be overturned on appeal unless an abuse of discretion is shown.  But the power to appoint a receiver with authority to take custody and control of property and operate it as a going concern is a delicate one which is jealously safeguarded, and it should be exerted sparingly. A court should be cautious and circumspect in the exertion of the remedy because perversion or abuse may work great hardship." *Skirvin v. Mesta*, 141 F.2d 668, 673 (10th Cir. 1944) (internal citations omitted).  This is true even under Oklahoma state law. *See Guaranty Laundry v. Pulliam*, 1948 OK 30, ¶ 31, 191 P.2d 975, 980 ("The right to have a receiver appointed is recognized in this jurisdiction as a matter resting within the sound judicial discretion of the trial court, whose judgment is not to be disturbed on appeal unless an abuse of discretion is shown.").  "Factors courts consider in deciding whether to appoint a receiver include: (1) the probability of plaintiff's success in the action and the possibility of irreparable injury to plaintiff's interests in the property; (2) probability that fraudulent conduct has occurred or will occur to frustrate the plaintiff's claim; (3) financial position

of the debtor; (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (5) inadequacy of available legal remedies; (6) lack of a less drastic equitable remedy; and (7) the likelihood that appointment of a receiver will do more good than harm." *American Bank & Trust Co. v. Bond International Ltd.*, 2006 WL 2385309, at *8 (N.D. Okla. Aug. 17, 2006), *citing Aviation Supply Corp.,* 999 F.2d 314, 316-17 (8th Cir. 1993); *Waag,* 10 F. Supp. 2d at 1193. *See also Fleet Business Credit, LLC v. Wings Restaurants, Inc.* 291 B.R. 550, 556 (N.D. Okla. 2003).

The Court finds that these factors weigh against the appointment of a receiver at this time. The Court finds that the Plaintiff's success in the action is not probable, nor has she demonstrated the possibility of irreparable injury or fraudulent conduct that has occurred or will occur. Although the Plaintiff has demonstrated several accounting irregularities and even a couple of serious and costly mistakes, *i. e.*, the laundry contract and the two weeks of missing payments from Medicaid, they do not rise to the level of fraud and there has been no demonstration of irreparable injury. Accordingly, Plaintiff is not entitled to this preliminary relief. Moreover, the Court finds that legal remedies are likely adequate to address most of her claims. Furthermore, the Court notes that appointing a receiver would necessarily involve an additional level of expense, which could ultimately affect the level of care the patients receive and could thereby affect the ultimate value of the corporation. Finally, in considering the factors for appointing a receiver, the Court finds that a less drastic equitable remedy is available to address Plaintiff's concerns regarding the possible current and/or future dissipation of assets.

As such, the Court *does* find that it is appropriate to enjoin going forward anything other than operation in the ordinary course of business by the nursing home, *i. e.*, regular day-to-day operation of the corporation should continue but there should be no capital expenditures, nor should there be bonuses at the officer level or an increase in benefits or salaries at officer level without further order of the Court. Additionally, the Court finds it appropriate that the Defendants should render at the end of each month an accounting of disbursements and receipts, to aid in tracking day-to-day rather than corporate expenses.

On matters related to corporate governance in this case, the stock groups are divided into a 50/50 split in which there has been evidence that communication and operation on a corporate level has broken down. Although there is some evidence the Defendants, who are maintaining operation and control of the corporation, have tried to accommodate the Plaintiff and her sister, there is a fundamental unfairness that can arise from this type of continued deadlock. There also arises the risk, not necessarily in evidence, that the group in control (here, the Defendants) would be using the income of the nursing home to supplement the dividends. "The [Oklahoma General Corporation Act (OGCA)] does not provide grounds for the judicial dissolution of a corporation at the request of a shareholder. In the absence of express statutory authority, a court of equity generally will not exercise jurisdiction over a corporation for the purpose of decreeing its dissolution." *Sutter v. Sutter Ranching Corp.*, 2000 OK 84, ¶ 14, 14 P.3d 58, 62 (but noting there is statutory authority for a minority shareholder in a farming or ranching corporation to sue for dissolution). The Court further notes that "[t]he prevailing rule is that a court of equity is without jurisdiction, in absence of statutory authority, to decree

dissolution of a corporation at the suit of a stockholder, or even the state." *Guaranty Laundry*, 1948 OK 30, ¶ 40, 191 P.2d at 981-982. Nevertheless, "equity may act to dissolve a corporation where there are dissensions among the stockholders, officers or directors where a clear case is shown for which there is no other adequate relief[.]" *Guaranty Laundry*, 1948 OK 30 ¶ 42, 191 P. 2d at 982. *See also Sutter*, 2000 OK 84, ¶ 14 n.18, 14 P.3d at 62 n.18 ("There is a recognized exception to the general rule that courts will not exercise equitable power over a corporation for the purpose of decreeing its dissolution and distributing its assets. A court of equity can, at the request of a minority shareholder, on a showing of fraudulent mismanagement or misappropriation of funds by the officers, appoint a receiver for a solvent corporation to take charge of its business, and if necessary, to wind up its business."). *See also Giuricich v. Emtrol Corp.*, 449 A. 2d 232, 240 (Del. 1982) (finding it an abuse of discretion to deny petition for appointment of custodian under identical provision to 18 Okla. Stat. § 1071, "despite a conceded shareholder-deadlock of indefinite duration which would, in effect, leave the existing directors in perpetual control of the corporate entity, and would relegate the one-half owners of the corporation to a perpetual minority status without remedy or recourse."). *But see King v. Coulter*, 550 P.2d 623, 625 (AZ 1976) ("Excessive salaries and bonuses and lack of dividends are not sufficient to warrant dissolution. Under allegations of bad faith or breach of fiduciary duty, other relief is available."). Accordingly, the Court will revisit the issue of dissolution following the resolution of the legal claims currently set for trial on October 17, 2017.

Finally, the Court turns to Plaintiff's request that the corporation cease payment of the individual Defendants' attorneys' fees. The Court denies this request without prejudice to it being reurged at the appropriate time following resolution of the legal issues in this case. Furthermore, the court directs all attorneys to consider their billing records and be making determinations about how to segregate fees to the extent they can so that unwinding is easier to do at the end.

All other relief not hereby granted is therefore denied in accordance with this and all previous Orders of the Court in this case. As announced at the close of the evidentiary hearing, the Court plans to bifurcate the issues in this case, with the legal issues remaining set for trial according to the current Scheduling Order in place, *see* Docket No. 73, and the equitable issues to be resolved thereafter pending the results of the jury trial. Accordingly, the Plaintiff's Application for Appointment of Custodian and/or Corporate Receiver and for Temporary Injunction and Supporting Brief [Docket No. 4] and Plaintiff's Application for Additional Temporary Orders and Supporting Brief [Docket No. 45] are both hereby GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED** this 5th day of May, 2017.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma